**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRANDON S. FOURNIER,** | : | |
| **Petitioner** | : | **No. 1:23-cv-00457** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **WARDEN OF SCI BENNER** | : | |
| **TOWNSHIP, <u>et</u> <u>al.</u>,** | : | |
| **Respondents** | : | |

## <u>MEMORANDUM</u>

Currently before the Court is a petition for a writ of habeas corpus under 28 U.S.C. §
2254 filed by pro se Petitioner Brandon S. Fournier ("Fournier").  For the reasons stated below,
the Court will deny Fournier's petition, decline to issue a certificate of appealability, and direct
the Clerk of Court to close this case.

## I.    BACKGROUND

On August 24, 2017, Fournier was arrested and charged with unlawful contact with a
minor – sexual offenses (18 Pa. C.S. § 6318(a)(1)) and criminal use of a communication facility
(18 Pa. C.S. § 7512(a)) after he and a special agent of the Office of Attorney General's Child
Predator Section, who was posing as a fourteen (14)-year-old boy, exchanged messages on the
mobile application Grindr in which they agreed to meet for the purpose of engaging in sexual
activity.  See <u>Commonwealth v. Fournier</u>, No. 754 MDA 2019, 2020 WL 1181977, at *1–2 (Pa.
Super. Ct. Mar. 11, 2020) (unpublished).  A jury trial was held in the Court of Common Pleas of
Dauphin County from September 27–28, 2018, and the jury found Fournier guilty of both
offenses and did not find that the special agent entrapped him.  See <u>id.</u> at 2.

The trial court set forth the facts underlying Fournier's convictions as follows:

On August 24, 2017, Agent [Gordon] Goodrow [("Agent Goodrow"), a supervisory
special agent with the Office of the Attorney General's Child Predator Section,]

had an undercover profile on Grindr, a mobile application that allows men to seek other men.  On this day, Agent Goodrow began to receive messages on the Grindr app from [] Fournier[,] who [had] initiated contact.  Based upon the conversations between Fournier and Agent Goodrow, Fournier was arrested.

The following is the relevant dialogue exchanged between Agent Goodrow, who was posing as a fourteen[-]year-old, and Fournier[,] on August 24, 2017, that led to Fournier's arrest[:]

Fournier: Cute pic U looking for a good time

Goodrow: Yeah this is my last week before school starts

Fournier: Where u from and u have a clear face pic what u in the mood for

Goodrow: Live in Harrisburg

Fournier: Tbats not far from me any more pics

Goodrow: [picture of boy sitting in driver's seat of car with his seatbelt on]

Fournier: How old are u

Goodrow: I'll be 15 in December

Fournier: What u want to dO

Goodrow: I haven't done anything

Fournier: How are u on here if your 15

[Fournier:] Does your parents no your gay

Goodrow: New to this and don't know any guys my age

[Goodrow:] No they do t

[Goodrow:] Don't

[Goodrow:] It's gotta be a secret

[Goodrow:] My mom would be so upset

[Goodrow:] And her boyfriend would probably be an ass

Fournier: I'm 35 old enough to b your dad let me see some more of you

Goodrow: Mmmmm showed you a pic???

[Goodrow:] Gotta be careful

[Goodrow:] Don't know you

[Goodrow:] Can't get in trouble

* * *

Fournier: Ur parents let u out at 14

[Fournier:] By yourself

Goodrow: My mom works downtown and lets me come with her

[Goodrow:] I went over to city island

[Goodrow:] She will drive me home at 5

[Goodrow:] When she gets off work

* * *

Fournier: If u got head from a guy would u cum fast

* * *

Fournier: Do you want to try it with a guy

Goodrow: Oh really

[Goodrow:] How?

Fournier: Some place outside

[Fournier:] Its up to you I just don't want to get in trouble for talking to u

* * *

Fournier: Would like to meet up some place

Goodrow: I can walk somewhere

Fournier: Where u want to walk to

Goodrow: I'm at strawberry square right now getting something to eat

[Goodrow:] I can walk to city island after

Fournier: Ok ill head their now

* * *

Fournier: I'm nervous about meeting up with u because of your age

* * *

Goodrow: If your not into I can understand

Fournier: Ill come meet you quick

[Fournier:] U almost their

Goodrow: Not yet

[Goodrow:] What if your a cop? I'm screwed

Fournier: I'm on my way

[Fournier:] I'm not a cop

[Fournier:] When's the last time u came

* * *

Goodrow: What if people see us?

Fournier: Ill b their in 6 min

Goodrow: I saw security there this morning

[Goodrow:] I'm just finishing my lunch

Fournier: Ok

Goodrow: What if people see us

Fournier: No one will

[Goodrow:] Really?

4

[Fournier:] Ill meet u on 3rd st by stsilons

Goodrow: Where's that????

* * *

Fournier: I'm here behind stsilons

Goodrow: Where we go then?

Fournier: I know places

Goodrow: Ok cool

[Goodrow:] Can't get caught

Fournier: Were not going to

Goodrow: Oh man

[Goodrow:] I'm excited

Fournier: U coming or what

Goodrow: Leaving now

Fournier: Hurry up

Goodrow: What you want to do first [smirking face emoji]

[Goodrow:] Damn

[Goodrow:] On my way

Fournier: look at you see what u think of me and see what u want to do

* * *

Fournier: Ur not going to get into trouble and I'm not going to hurt u

Goodrow: But you won't even tell me what you want to do and you could def hurt me

Fournier: Lets just meet first so I know your for real and not trying to set me up

[Fournier:] U almost here

\* \* \*

[Fournier:] Hurry up
[Fournier:] Where u at

Goodrow: I'm walking

Fournier: Ok well if u want to do something it needs to happen quick

Goodrow: Kk

Fournier: U want me to blow u

Goodrow: Umm ok. How

[Goodrow:] Where r u

Fournier: I'm behind stallions theirs an alley way in between 704 and stallions

Goodrow: OkAy

[Goodrow:] Blue car ?

Fournier: Yea I'm at the end of the parking lot

Goodrow: Okay

Fournier: How close are u

Goodrow: Almost there

See id. at \*1–2 (all alterations and errors in original) (quoting Trial Ct. Op.).

On January 23, 2019, Fournier was sentenced to a minimum of four (4) years to a maximum of eight (8) years of state incarceration, to be followed by a consecutive period of five (5) years' probation.  See id. at \*2  He also had to register as a sex offender under Pennsylvania's Sex Offender Registration and Enforcement Act, 42 Pa. C.S. §§ 9799.10–.41.  See id. at \*2 & n.3.  Fournier timely filed a post-sentence motion, for which the trial court held a hearing on March 14, 2019, and ultimately denied on April 12, 2019.  See Docket, Commonwealth v.

Fournier, No. CP-22-CR-0005626-2017 (Dauphin Cnty. Ct. Com. Pl. filed Oct. 18, 2017) ("CCP Dkt."); (Doc. Nos. 16-6–16-8).[1]  Fournier then timely filed a notice of appeal to the Pennsylvania Superior Court in which he argued that the trial court erred "in refusing to find entrapment as a matter of law, where the court correctly found that the issue of entrapment had been properly raised, and there was no dispute as to the operative facts relating to the defense." See Fournier, 2020 WL 1181977, at *3 (quoting Br. for Appellant at 5); see also (Doc. No. 16-15).  The Superior Court, through an unpublished decision issued on March 11, 2020, rejected Fournier's argument, agreeing with the trial court that the special agent's conduct "did not rise to the requisite level of outrageousness that would justify a finding of entrapment as a matter of law." See id. at *4 (quoting Trial Ct. Op., 7/8/19, at 7–9); see also (Doc. No. 16-17 at 11).  As such, the Superior Court affirmed Fournier's criminal judgment.  See Fournier, 2020 WL 1181977, at *4; see also (Doc. No. 16-17 at 11).

Following the Superior Court's decision, Fournier timely filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which the Court denied on October 15, 2020.  See Commonwealth v. Fournier, 240 A.3d 108 (Pa. 2020) (Table); see also (Doc. Nos. 16-18, 16-19, 16-21).  Fournier did not file a petition for a writ of certiorari with the United States Supreme Court.

Despite having a pending direct appeal, Fournier pursued post-conviction collateral relief by filing a pro se petition under Pennsylvania's Post Conviction Relief Act, 42 Pa. C.S. §§ 9541–

---

[1]  The Court takes judicial notice of the docket for Fournier's underlying criminal case, which is available on the Unified Judicial System of Pennsylvania Web Portal (https://ujsportal.pacourts.us/CaseSearch).  See Orabi v. Att'y Gen. of the U.S., 738 F.3d 535, 537 n.1 (3rd Cir. 2014) (stating that the court "may take judicial notice of the contents of another [c]ourt's docket"); Wilson v. McVey, 579 F. Supp. 2d 685, 688 n.5 (M.D. Pa. 2008) (taking judicial notice of court docket).

46 ("PCRA"), on July 23, 2020.  See CCP Dkt.; (Doc. No. 16-12).  On July 28, 2020, the PCRA

court dismissed Fournier's PCRA petition as premature insofar as his petition for allowance of

appeal was still pending before the Pennsylvania Supreme Court.  See CCP Dkt.; (Doc. No. 16-

13).

       Fournier then filed another pro se PCRA petition on September 7, 2021, in which he

appeared to argue that (1) law enforcement seized his cell phone and analyzed its contents

without a warrant, (2) law enforcement seized his car, searched it, and "finger printed [sic] it"

without a warrant and without his consent, (3) law enforcement retained possession of his car

"for an undetermined amount of time," (4) trial counsel was ineffective for failing to file a

suppression motion relating to law enforcement's unlawful seizure of Fournier's phone and car,

(5) trial counsel failed to object to the trial testimony from a certain law enforcement officer, and

(6) the trial court illegally enhanced his sentence because his prior record score was

miscalculated.  See CCP Dkt.; (Doc. No. 16-22 at 5–9).[2]  Two days later, the PCRA court

appointed counsel to represent Fournier.  See CCP Dkt.; (Doc. No. 16-23).

       On December 3, 2021, PCRA counsel filed a motion to withdraw as Fournier's counsel.

See CCP Dkt.; (Doc. No. 16-24).  Four days later, the PCRA court granted the motion, see CCP

---

[2]  Because Fournier's initial PCRA petition was dismissed as premature, his September 7, 2021
petition still constituted his first PCRA petition for purposes of the PCRA.  See Commonwealth
v. Kubis, 808 A.2d 196, 198 n.4 (Pa. Super. Ct. 2002) (explaining that a PCRA petition filed
before the petitioner's judgment of sentence becomes final is considered a "premature petition"
and "does not constitute a first PCRA petition"); see also Commonwealth v. Neisser, No. 1968
EDA 2019, 2020 WL 603614, at *3 (Pa. Super. Ct. Feb. 7, 2020) (unpublished) (quashing PCRA
petitioner's appeal from the dismissal of his PCRA petition because he "filed his PCRA petition
prior to the finality of his judgment of sentence" and, thus, his "filing was a legal nullity, and the
PCRA court lacked authority to consider it and should have dismissed it without prejudice
toward [the petitioner's] right to file a PCRA petition once the time for him to file a direct appeal
had expired").

Dkt.; (Doc. No. 16-25); however, the PCRA court vacated this order through a separate order issued on December 21, 2021.  See CCP Dkt.; (Doc. No. 16-26).

On January 13, 2022, the PCRA court issued a memorandum opinion and order granting PCRA counsel's motion to withdraw and notifying Fournier that the PCRA court intended to dismiss his pro se PCRA petition without a hearing because it was meritless.  See CCP Dkt.; (Doc. No. 16-27).  Fournier did not file a response to the PCRA court's notice of intent to dismiss, and the PCRA court entered an order dismissing Fournier's PCRA petition without a hearing on February 7, 2022.  See CCP Dkt.; (Doc. No. 16-28).

Fournier, proceeding pro se, filed a timely appeal from the dismissal of his PCRA petition to the Superior Court on March 2, 2022.  See CCP Dkt.; (Doc. No. 16-30).  On November 3, 2022, the Superior Court issued an order quashing Fournier's appeal due to his failure to file a brief.  See (Doc. Nos. 16-30 at 4; 16-39).  Fournier did not file a petition for allowance of appeal with the Pennsylvania Supreme Court.

On March 1, 2023, Fournier filed his Section 2254 habeas petition in this case.[3]  Because Fournier did not use the Court's standard form when filing his petition, an Administrative Order issued that provided him with notice of the limitations on his filing of future Section 2254

---

[3]  The federal "prisoner mailbox rule" provides that a pro se prisoner's petition is deemed filed "at the time petitioner delivered it to the prison authorities for forwarding to the court clerk." See Houston v. Lack, 487 U.S. 266, 276 (1988).  Here, Fournier included a declaration with his petition indicating that he placed his petition in the prison mail system on March 1, 2023.  See (Doc. No. 1 at 8).  As such, the court uses March 1, 2023, as the petition's filing date even though the Clerk of Court did not docket the petition until March 15, 2023.

Additionally, Fournier neither remitted the filing fee or applied for leave to proceed in forma pauperis when he filed his habeas petition; as such, an Administrative Order issued requiring him to either pay the fee or file an application for leave to proceed in forma pauperis.  (Doc. No. 3.) Fournier timely complied with this Administrative Order by filing an application for leave to proceed in forma pauperis on March 24, 2023 (Doc. No. 4), and his certified prisoner trust fund account statement on April 3, 2023 (Doc. No. 6).

petitions and directed him to sign and return a notice of election if, after reviewing the Administrative Order, he wanted to have the Court rule on his petition as filed.  (Doc. No. 9.)  Fournier timely signed and returned a notice of election in which he expressed his desire to have the Court rule on his petition as filed instead of withdrawing it to file a new, comprehensive petition.  (Doc. No. 10.)

On June 21, 2023, the Court issued an Order which, <u>inter alia</u>, granted Fournier's application for leave to proceed <u>in forma pauperis</u> and directed Respondents to file a response to his habeas petition.  (Doc. No. 11.)  After receiving an extension of time to file their response (Doc. Nos. 13, 14), Respondents timely filed their response in opposition to Fournier's habeas petition on October 2, 2023.  (Doc. No. 16.)  Fournier did not file a reply brief in further support of his petition.

## II.    LEGAL STANDARDS

### A.    Section 2254 Habeas Petitions

A petition for writ of habeas corpus is the exclusive federal remedy for a state prisoner challenging the "very fact or duration" of their confinement and seeking "immediate release or a speedier release from that imprisonment."  <u>See</u> <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 498–99 (1973); <u>Leamer v. Fauver</u>, 288 F.3d 532, 542–44 (3d Cir. 2002).  A district court is authorized to "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that [they are] in custody in violation of the Constitution or laws or treaties of the United States."  <u>See</u> 28 U.S.C. § 2254(a).  Claimed violations of state law, standing alone, will not entitle a petitioner to relief, absent a showing that those violations are so great as to be of a constitutional dimension.  <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court

determinations on state-law questions. In conducting habeas review, a federal court is limited to

deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

Furthermore, a state prisoner seeking to invoke the power of this Court to issue a writ of habeas

corpus must have exhausted the remedies available to them in the courts of the state.  See 28

U.S.C. § 2254(b)(1)(A).

These same principles that limit habeas relief to errors of a constitutional dimension also

require federal courts to give an appropriate degree of deference to the factual findings and legal

rulings made by the state courts during state criminal proceedings.  There are two critical

components to this deference mandated by Section 2254.

First, with respect to legal rulings by state courts, habeas relief is unavailable to a

petitioner for any claim that has been adjudicated on its merits in state court unless it can be

shown that the state court decision was either: (1) "contrary to" or involved an unreasonable

application of clearly established case law; see id. § 2254(d)(1); or (2) was "based upon an

unreasonable determination of the facts in light of the evidence presented in the State court

proceeding," see id. § 2254(d)(2).  Applying this deferential standard of review, federal courts

frequently decline invitations by habeas petitioners to substitute their legal judgments for the

considered views of the state trial and appellate courts.  See Rice v. Collins, 546 U.S. 333, 338–

39 (2006) (concluding that state court's decision on petitioner's peremptory challenge based on

Batson v. Kentucky, 476 U.S. 79 (1986), "was not an unreasonable determination of the facts in

light of the evidence presented to the state court"); see also Warren v. Kyler, 422 F.3d 132, 139–

40 (3d Cir. 2006) (determining that state court's decision to apply presumption in the applicable

version of 42 Pa. C.S. § 9714 was not "an objectively unreasonable application of clearly

established federal law"); Gattis v. Snyder, 278 F.3d 222, 231 (3d Cir. 2002) ("We agree with

the District Court that the state court decisions are not contrary to clearly established federal law.").

In addition, the determination of a factual issue by a state court is presumed to be correct unless the petitioner can show by clear and convincing evidence that this factual finding was erroneous.  See 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").  This presumption in favor of the correctness of state court factual findings has been extended to a host of factual findings made during criminal proceedings.  See, e.g., Maggio v. Fulford, 462 U.S. 111, 117 (1983) (per curiam) (explaining that under the applicable standard, "we have not the slightest hesitation in saying that the trial court's conclusion as to [the defendant's] competency was fairly supported by the record" (citation and internal quotation marks omitted)).  This principle applies to factual findings made both by the state trial court and state appellate courts.  See Rolan v. Vaughn, 445 F.3d 671, 679 (3d Cir. 2006) ("Generally, federal courts defer to state appellate court determinations of fact.").  Thus, this Court may not reassess credibility determinations made by the state courts and must give equal deference to both the explicit and implicit factual findings made by the state courts.  See Weeks v. Snyder, 219 F.3d 245, 258 (3d Cir. 2000) ("[W]e must provide the same presumption of correctness required by § 2254(e)(1) to the state courts' implicit factual findings as we provide to express findings of the state courts." (citing Campbell v. Vaughn, 209 F.3d 280, 285–86 (3d Cir. 2000))).  Applying this standard of review, federal courts may only grant habeas relief

whenever "[o]ur reading of the PCRA court records convinces us that the Superior Court made an unreasonable finding of fact." See Rolan, 445 F.3d at 681.

### B.     Exhaustion of State Remedies and Procedural Default

Absent unusual circumstances, a federal court should not entertain a petition for writ of habeas corpus, unless the petitioner has first satisfied the statutory exhaustion requirement providing that habeas relief "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." See 28 U.S.C. § 2254(b)(1)(A); see also O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). This exhaustion requirement is grounded on principles of comity to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. See Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000); Picard v. Connor, 404 U.S. 270, 275–76 (1971).

Section 2254 codifies this principle by requiring that a habeas petitioner exhaust the remedies available in the courts of the State, see 28 U.S.C. § 2254(b)(1)(A), meaning a state prisoner must "fairly present" their claims in "one complete round of the state's established appellate review process," before bringing them in federal court. See O'Sullivan, 526 U.S. at 845 (stating that "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established review process"). This requires that the claim brought in federal court be the substantial equivalent of that presented to the state courts. See Picard, 404 U.S. at 278 ("[T]he substance of a federal habeas corpus claim must first be presented to the state courts."); see also McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999) (holding that petitioner must present both "factual and legal

substance" of claim to state courts).  Mere reliance of state and federal claims on the same

constitutional provision does not render the two claims substantially equivalent.  See Brown v.

Cuyler, 669 F.2d 155 (3d Cir. 1982); Zicarelli v. Gray, 543 F.2d 466 (3d Cir. 1976).  Instead,

both the legal theory and the facts on which a federal claim rests must have been presented to the

state courts.  See Picard, 404 U.S. at 277; Brown, 669 F.2d at 158–61.

"When a claim is not exhausted because it has not been 'fairly presented' to the state

courts, but state procedural rules bar the applicant from seeking further relief in state courts, the

exhaustion requirement is satisfied because there is 'an absence of available State corrective

process.'"  McCandless, 172 F.3d at 260 (quoting 28 U.S.C. § 2254(b)).  Nevertheless, Section

2254 habeas petitioners "are considered to have procedurally defaulted their claims and federal

courts may not consider the merits of such claims unless the applicant establishes 'cause and

prejudice' or a 'fundamental miscarriage of justice' to excuse [their] default."  See id. (quoting

Coleman v. Thompson, 501 U.S. 722, 750 (1991).  To demonstrate "cause" for a procedural

default, a petitioner must point to some objective external factor which impeded their efforts to

comply with the state's procedural rule.  See Murray v. Carrier, 477 U.S. 478, 488 (1986).

"Prejudice" will be satisfied only if the petitioner can demonstrate that the outcome of the state

proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law.  See

Lockhart v. Fretwell, 506 U.S. 364, 366 (1993).

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably

resulted in the conviction of one who is actually innocent," see Murray, 477 U.S. at 496, then a

federal court can excuse the procedural default and review the claim to prevent a fundamental

miscarriage of justice.  See Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Wenger v. Frank,

266 F.3d 218, 224 (3d Cir. 2001).  The miscarriage of justice exception applies only in

extraordinary cases, and actual innocence means factual innocence, not legal insufficiency.  See Bousley v. United States, 523 U.S. 614, 623 (1998); Murray, 477 U.S. at 496.  A petitioner establishes actual innocence by asserting "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt.  See Hubbard v. Pinchak, 378 F.3d 333, 339–40 (3d Cir. 2004).

In general, attorney errors in collateral proceedings do not establish cause to excuse a procedural default unless the petitioner can meet the narrow exception to this general rule set forth in Martinez v. Ryan, 566 U.S. 1 (2010).  Under Martinez, "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial," see id. at 9, if the petitioner can satisfy two factors: that the underlying, otherwise defaulted, claim of ineffective assistance of trial counsel is "substantial," meaning that it has "some merit," see id. at 14; and that the petitioner had "no counsel" or "ineffective" counsel during the initial phase of the state collateral review proceeding.  See id. at 17; see also Glenn v. Wynder, 743 F.3d 402, 410 (3d Cir. 2014).

A petitioner demonstrates that the underlying ineffective assistance of trial counsel claim has "some" merit by "show[ing] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  See Workman v. Superintendent Albion SCI, 915 F.3d 928, 937–38 (3d Cir. 2019); see also Martinez, 566 U.S. at 13–14.  A petitioner demonstrates that post-conviction counsel's ineffectiveness caused the procedural default by showing that post-conviction counsel's performance was deficient under

the first prong of the standard established in <u>Strickland v. Washington</u>, 466 U.S. 668, 685 (1984).

<u>See</u> <u>Preston v. Superintendent Graterford SCI</u>, 902 F.3d 365, 376 (3d Cir. 2018); <u>see also</u>

<u>Workman</u>, 915 F.3d at 937–38.[4]

## III.    DISCUSSION

### A.    Fournier's Claims in his Section 2254 Habeas Petition

Fournier appears to raise the following claims for relief in his habeas petition.  First,

Fournier asserts that law enforcement engaged in "illegal procedural strategic tactics" when

arresting him because he "was actively visiting a legally sanctioned Adult website that [he] has

consistently visited for personal sexual entertainment/personal relationships with consenting

'male' counter-parts [sic] of legal age."  <u>See</u> (Doc. No. 1 at 6).  He argues that law enforcement

"purely and significantly created and manufactured" the "corrupt circumstances" leading to his

arrest because they "intercepted/interjected themselves . . . into a legally sanctions website to

---

[4]  Under the first prong of the <u>Strickland</u> standard, a petitioner must show that "counsel's performance was deficient."  <u>See</u> 466 U.S. at 687.  This requires a showing that "counsel's representation fell below an objective standard of reasonableness."  <u>See</u> <u>id.</u> at 687–88; <u>Williams v. Taylor</u>, 529 U.S. 362, 390–91 (2000).  "Counsel's performance is deficient only 'when counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed . . . by the Sixth Amendment.'"  <u>McKernan v. Superintendent Smithfield SCI</u>, 849 F.3d 557, 564 (3d Cir. 2017) (quoting <u>McBride v. Superintendent, SCI Houtzdale</u>, 687 F.3d 92, 102 (3d Cir. 2012)).  This requires the "reasonably effective assistance" of counsel:

> [Courts] consult no checklist, as no catalog can "satisfactorily take [into] account . . . the range of legitimate decisions regarding how best to represent a criminal defendant."  <u>Id.</u> at 688–89[.]  That is why [the courts'] review of counsel's performance is "highly deferential," <u>United States v. McCoy</u>, 410 F.3d 124, 135 (3d Cir. 2005), for "it is all too easy for a court" to find a certain act or omission unreasonable after the defense ultimately proves unsuccessful, <u>Strickland</u>, 466 U.S. at 689[;] <u>see also</u> <u>Rolan v. Vaughn</u>, 445 F.3d 671, 681–82 (3d Cir. 2006) ("[C]ounsel's strategic choices will not be second-guessed by post-hoc determinations that a different trial strategy would have fared better.").

<u>See</u> <u>Rogers v. Superintendent Greene SCI</u>, 80 F.4th 458, 462 (3d Cir. 2023).

corrupt its purpose." <u>See</u> (<u>id.</u>). They also would not explain how it was "possible or a 14-[year-old] imaginary child to access an adult website." <u>See</u> (<u>id.</u>).

Second, Fournier asserts that he was "inebriated and physically exhausted" at the time of his actions and arrest, and thus "was mostly unaware/conscious/cognizant . . that the police had 'illegally and unscrupulously entangled [him] in a personal 'vendetta' to persecute, arrest, [and] prosecute . . . their territory of "homos!" <u>See</u> (<u>id.</u>). In support of this claim, Fournier alleges that the arresting officer and his partner referred to him as a "homo" or "faggot" rather than his actual name, and stated that they "got another 'faggot,' etc." <u>See</u> (<u>id.</u>). He also contends that police only "round[ed] up 'homosexual males' and not women, bi-sexuals, etc.," showing that they were specifically targeting homosexuals like himself. <u>See</u> (<u>id.</u> at 7).

Third, Fournier complains that despite his criminal record showing that he had three previous convictions for driving under the influence, law enforcement never gave him a field sobriety test. <u>See</u> (<u>id.</u> at 6). Fourth, Fournier complains that law enforcement arrested him without reading him his <u>Miranda</u> rights or informing him of the reasons for his arrest. <u>See</u> (<u>id.</u>) Fifth, Fournier asserts that his car was unlawfully seized and searched without his consent, and law enforcement refused to "properly impound" his car and its contents for possible prosecution. <u>See</u> (<u>id.</u>).

Sixth, and finally, Fournier claims that he "routinely brought" the "significant issues raised" in this habeas petition to his trial counsel, only to have his counsel "suspiciously reject[]" them. <u>See</u> (<u>id.</u> at 7). He notes that he has "multiple chronic mental health issues [and] trauma . . . that allowed [his] counsel[, the assistant district attorney, and the trial court to] impede [his] rights to a fair [and] impartial trial." <u>See</u> (<u>id.</u>).

17

For relief, Fournier seeks the "redaction" of all charges, his immediate release from incarceration, and his permanent removal from any sex registry listings. See (id.). He also seeks $88,000 in compensatory damages and an injunction preventing law enforcement from conducting any "future tactile . . . entrapments." See (id.).

### B.    Respondents' Arguments in Opposition to the Petition

Respondents oppose Fournier's requests for habeas relief on two grounds. See (Doc. No. 16 at 6–20). First, they assert that even though Fournier timely filed his petition, see (id. at 7–9), his claims are procedurally defaulted because he did not raise them on direct appeal and the Superior Court quashed his PCRA appeal due to his failure to file a supporting brief. See (id. at 10–19). Second, they contend that Fournier's "bad grounds for relief, coupled with his failure to reference the state court record in his purported factual support for his grounds for relief, also establish that his habeas petition lacks merit and should be denied." See (id. at 19–20).

### C.    Analysis

#### 1.    Fournier's Request for Money Damages

Fournier seeks $88,000 in compensatory damages in his petition. See (Doc. No. 1 at 7). The Court will deny this request for relief because money damages are unavailable in federal habeas actions. See Preiser, 411 U.S. at 494 (explaining that "if a . . . prisoner is seeking damages, [they are] attacking something other than immediate or more speedy release—the traditional purpose of habeas corpus. In the case of a damages claim, habeas corpus is not an appropriate or available federal remedy"); Gladden v. Doll, No. 21-cv-00802, 2021 WL 2567015, at *4 (M.D. Pa. June 23, 2021) ("Money damages are not available in a habeas action." (citing Ruff v. Warden FCI Schuylkill, No. 20-cv-00851, 2020 WL 2839092, at *1 n.2 (M.D. Pa. June 1, 2020))).

### 2.    Whether Fournier's Petition is Moot

The Court's review of the Commonwealth of Pennsylvania Department of Corrections ("DOC") Inmate Locator (https://inmatelocator.cor.pa.gov/#/) shows that Fournier was released on parole on November 1, 2023.[5]  However, Fournier sent the Court a letter in April 2024, stating that he was recommitted to a DOC correctional institution on a technical parole violation. See (Doc. No. 18).  It is unclear how long Fournier remained incarcerated after he was recommitted, but the DOC's Inmate Locator indicates that he is not incarcerated and is currently on parole.  Therefore, the Court must address whether Fournier's habeas petition is moot due to his release from incarceration.

"Article III of the [United States] Constitution limits federal 'judicial Power' to the adjudication of 'Cases' or 'Controversies.'" Abreu v. Superintendent Smithfield SCI, 971 F.3d 403, 406 (3d Cir. 2020) (quoting Toll Bros., Inc. v. Twp. of Readington, 555 F.3d 131, 137 (3d Cir. 2009)).  "For a case or controversy to exist, a petitioner, throughout each stage of the litigation, 'must have suffered, or be threatened with, an actual injury traceable to the [respondent] and likely to be redressed by a favorable judicial decision.'" Id. (quoting DeFoy v. McCullough, 393 F.3d 439, 442 (3d Cir. 2005)).  Consequently, "a habeas corpus petition generally becomes moot when a prisoner is released from custody because the petitioner has received the relief sought." See id. (citing DeFoy, 393 F.3d at 441); see also Hamilton v. Bromley, 862 F.3d 329, 335 (3d Cir. 2017) (explaining that mootness is "a doctrine that 'ensures that the litigant's interest in the outcome continues to exist throughout the life of the lawsuit,'

---

[5]  Fournier has not updated the Court as to his address as required by the Local Rules.  See M.D. Pa. L.R. 83.18 ("Whenever a party by whom or on whose behalf an initial paper is offered for filing is not represented in the action, such party shall maintain on file with the clerk a current address at which all notices and copies of pleadings, motions or papers in the action may be served upon such party.").

and which is 'concerned with the court's ability to grant effective relief'" (quoting <u>Freedom from Religion Found. Inc. v. New Kensington Arnold Sch. Dist.</u>, 832 F.3d 469, 476 (3d Cir. 2016) and <u>County of Morris v. Nationalist Movement</u>, 273 F.3d 527, 533 (3d Cir. 2001))).

Nevertheless, a petitioner who has been released from custody "may obtain judicial review of a [habeas] petition by showing that [they] continue[] to suffer from secondary or collateral consequences of [their] conviction." <u>See</u> <u>Abreu</u>, 971 F.3d at 406 (citations omitted). Generally speaking, "collateral consequences will be presumed when the [petitioner] is attacking [their] conviction while still serving the sentence imposed for that conviction [and] . . . where the[y are] attacking that portion of [their] sentence that is still being served." <u>See</u> <u>id.</u> (citing <u>United States v. Jackson</u>, 523 F.3d 234, 242 (3d Cir. 2008)). Once a petitioner has been released, however, the Court does "not presume that a conviction carries collateral consequences." <u>See</u> <u>Abreu</u>, 971 F.3d at 406 (citing <u>Burkey v. Marberry</u>, 556 F.3d 142, 148 (3d Cir. 2009)). Instead, the Court "must 'address[] the issue of collateral consequences in terms of the "likelihood" that a favorable decision would redress the injury or wrong.'" <u>See</u> <u>id.</u> (quoting <u>Burkey</u>, 556 F.3d at 148). For that reason, "[i]t is not enough if 'collateral consequences proffered by the petitioner' amount to 'a possibility rather than a certainty or even a probability.'" <u>See</u> <u>id.</u> (quoting <u>Burkey</u>, 556 F.3d at 148).

Here, Fournier's release on parole does not moot his Section 2254 petition because:

> "[I]n the criminal context, an individual who is on parole or released on his or her own recognizance is deemed in custody because of the significant restrictions imposed on his or her freedom." <u>Kumarasamy v. Att'y Gen. of U.S.</u>, 453 F.3d 169, 172 (3d Cir. 2006). A petitioner's release on parole may render his habeas claims moot where release on parole is the only relief sought. <u>See, e.g.</u>, <u>Razzoli v. FCI Allenwood</u>, 200 F. App'x 166, 169 (3d Cir. 2006).

<u>See</u> <u>Wilson v. Delbalso</u>, No. 19-cv-05205, 2021 WL 3777124, at *2 n.4 (E.D. Pa. June 29, 2021), <u>report and recommendation adopted</u>, 2021 WL 3771871 (E.D. Pa. Aug. 24, 2021); <u>see</u>

also Harris v. Lagana, No. 13-cv-05063, 2015 WL 4413085, at *2 (D.N.J. July 16, 2015)

(explaining that the "custody" requirement for habeas corpus relief "is defined not only as

physical confinement, but includes such limitations on a person's liberty as those imposed during

parole").  Here, Fournier's requests for relief include more than simply his immediate release

from incarceration.  Accordingly, his habeas petition is not moot.

### 3.    Procedural Default

After reviewing the record, Fournier's petition, and Respondents' response to the

petition, the Court concludes that all of Fournier's claims are procedurally defaulted.  Fournier

fully exhausted only one claim through the Pennsylvania state courts, namely, his claim on direct

appeal that the trial court erred in refusing to find entrapment as a matter of law.  He technically

preserved this claim by raising it on appeal to the Superior Court, see Fournier, 2020 WL

1181977, at *3 (identifying Fournier's question for review on appeal as: "Did not the trial court

err in refusing to find entrapment as a matter of law, where the court correctly found that the

issue of entrapment had been properly raised, and there was no dispute as to the operative facts

relating to the defense?"), and then by filing a petition for allowance of appeal with the

Pennsylvania Supreme Court.  However, he did not include this claim in his habeas petition, see

(Doc. No. 1 at 6–7); therefore, the fact that he fully exhausted this claim is irrelevant to the

Court's resolution of his habeas petition.

Regarding any other claim Fournier identifies in his habeas petition, even if the Court

presumed that they were all raised in his PCRA petition, he never exhausted the claims.  The

Superior Court quashed Fournier's appeal from the dismissal of his PCRA petition because he

failed to file an appellate brief, despite the Superior Court having granted him multiple

extensions of time to do so.  See (Doc. Nos. 16-31–16-36, 16-39).[6]  Since Fournier failed to

properly present his PCRA claims to the Superior Court, those claims are unexhausted.  See

Lambert v. Blackwell, 387 F.3d 210, 233–34 (3d Cir. 2004).  Moreover, Fournier can never

exhaust these claims because the PCRA's statute of limitations for raising them has expired.  See

42 Pa. C.S. § 9545(b)(1) (setting forth limitations period for PCRA petitions).[7]  Accordingly,

Fournier's claims are procedurally defaulted.  See Keller v. Larkins, 251 F.3d 408, 415 (3d Cir.

2001).

Fournier could have attempted to demonstrate that the Court should excuse the

procedural default of his claims, if he addressed the issue in his habeas petition or in a reply

brief.  Fournier did not address this issue at all in his petition, see (Doc. No. 1 at 1–8), and he did

not file a reply brief.  Therefore, he fails to show that cause and prejudice exist to excuse the

---

[6]  The Court appreciates Respondents' submission of a thorough state-court record in this case, which greatly facilitated the Court's review.

[7]  Under the PCRA, Fournier has one year from the date his judgment of sentence becomes final to file a PCRA petition, unless "the petition alleges and the petitioner proves that" it falls within one of the limited exceptions to the one-year filing requirement.  See id.  Here, Fournier's judgment of sentence became final on January 13, 2021, ninety days after the Pennsylvania Supreme Court denied his petition for allowance of appeal and he did not seek further review by the United States Supreme Court.  See U.S. Sup. Ct. R. 13 (requiring a petition for a writ of certiorari to be filed "within 90 days after the entry of the order denying discretionary review"); Gonzalez v. Thaler, 565 U.S. 134, 150 (2012) ("For petitioners who pursue direct review all the way to this Court, the judgment becomes final at the 'conclusion of direct review'—when this Court affirms a conviction on the merits or denies a petition for certiorari.  For all other petitioners, the judgment becomes final at the 'expiration of the time for seeking such review'— when the time for pursuing direct review in this Court, or in state court, expires.").  Thus, Fournier had until January 13, 2022, to file his PCRA petition.  Fournier does not attempt to explain how he would meet one of the three exceptions to the PCRA time bar, see 42 Pa. C.S. § 9545(b)(1)(i)–(iii), if he filed a petition now, and it appears that any claims he would raise would be waived under the PCRA.  See 42 Pa. C.S. § 9544(b) ("(b) Issues waived.--For purposes of this subchapter, an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding.").

default, and he has not provided any new, reliable evidence of his actual innocence. This failure precludes this Court from reviewing his habeas claims on their merits. See Coleman, 501 U.S. at 750 ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.").[8]

### D.    Certificate of Appealability

"Unless a circuit justice or judge issues a certificate of appealability [("COA")], an appeal may not be taken to the court of appeals from . . . the final order in a habeas proceeding in which the detention complained of arises out of process issued by a State court[.]" 28 U.S.C. § 2253(c)(1)(A). A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2). When deciding whether to issue a COA after a dismissal on procedural grounds, the Court applies the following standard:

> [w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling . . . . Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner

---

[8] Even if Fournier's habeas petition could somehow be interpreted as including a claim that the trial court erred in not finding that he established the affirmative defense of entrapment as a matter of law under 18 Pa. C.S. § 313, such a claim raises only an issue of state law which is not reviewable under Section 2254. See 28 U.S.C. § 2254(a) (providing that federal habeas relief is available to a person "in custody in violation of the Constitution or laws or treaties of the United States"); Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (stating that "federal habeas corpus relief does not lie for errors of state law").

should be allowed to proceed further.  In such a circumstance, no appeal would be warranted.

See Slack v. McDaniel, 529 U.S. 473, 484 (2000).

In this case, jurists of reason would not find the disposition of this case debatable, i.e., that Fournier's Section 2254 claims are procedurally defaulted.  Accordingly, the Court will not issue a COA in this case.

## IV.    CONCLUSION

For the reasons discussed above, the Court will deny Fournier's Section 2254 habeas petition, decline to issue a COA, and direct the Clerk of Court to close this case.  An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania